**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTONIO M. VALENZUELA,<br><br>          Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>          Defendant. | No. CV 05-02883-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI"). Alternatively, he asks for a remand. On May 31, 2005, the parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation filed on February 17, 2006. (Joint Stipulation ("JS") at 1-15). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On October 30, 2001, Plaintiff filed an application for SSI benefits. (Administrative Record ("AR") 92-95). He claimed that he was unable to work due to back pain, neck pain, leg pain, shoulder pain, hepatitis C, arthritis and stress. (AR 92, 106). At the hearing, Plaintiff primarily complained that he was disabled due to lower back pain. (AR 40, 42-43).

The Agency denied Plaintiff's application both initially and upon reconsideration. (AR 63-65, 68-71). A hearing was held on September 17, 2003 before administrative law judge ("ALJ") Ariel Sotolongo. (AR 33-60). Plaintiff, who was represented by counsel, testified on his own behalf. (AR 36-55). A vocational expert also testified. (AR 51-58). On November 25, 2003, the ALJ issued a decision denying Plaintiff benefits. (AR 26-31). On February 17, 2005, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.[1] (AR 4-6). Plaintiff subsequently filed his Complaint on April 25, 2005.

\\

---

[1] After the hearing but before the Appeals Council's decision, Plaintiff submitted new evidence pertaining to his health. Plaintiff underwent a craniotomy and aneurysm clipping for subarachnoid hemorrhage. (AR 10-12, 248). He was subsequently transferred to Rancho Los Amigos National Rehabilitation Center on March 12, 2004 for the purpose of inpatient rehabilitation. (AR 248). The Appeals Council denied Plaintiff's request for review after considering the additional evidence. (AR 4). In his brief before this Court, Plaintiff did not argue this additional evidence nor did he raise any legal arguments pertaining to the Appeals Council's review of the evidence. As such, it is not before this Court and the Court will not consider it as part of the present decision.

**FACTUAL BACKGROUND**

Plaintiff was born on December 25, 1952 and was fifty years old at the time of the hearing. (AR 36, 92). He has an eleventh grade education and his past work experience includes employment as an ironworker apprentice, a truck driver, a warehouser, a floor cleaner and a groundskeeper. (AR 26, 36-42, 52-55). Plaintiff alleged that he became disabled on August 1, 2000 due to back and joint pain. (AR 26, 106). Plaintiff asserted that he had trouble sleeping, cleaning, shopping and doing laundry. (AR 44, 48-49, 123). Plaintiff stated that he took medication to assist him in sleeping, to alleviate his back pain and also to control his blood pressure and anxiety.[2] (AR 127, 175, 178).

A.  **Plaintiff's Testimony**

Plaintiff testified that he was unable to sit or stand for a prolonged period of time due to his back pain.[3] (AR 44, 50). Plaintiff claimed that he utilized a cane to assist him in standing up and walking. (AR 43). In addition, Plaintiff opined that he was only able to walk for about two blocks without rest. (AR 45). He asserted that he took daily walks to a park about half a block away and attended church every Sunday. (AR 48-49). Plaintiff testified to being able to

---

[2] Plaintiff took Acetaminophen Codeine 300 mg for his back pain. (AR 175; 177).

[3] Plaintiff asserted that he was unable to sit continuously for more than twenty minutes. (AR 44).

groom himself, cook meals and do chores (i.e., sweeping and mopping).[4] (AR 48-49). Plaintiff stated that the pain medication effectively lessened his back pain. (AR 45). At the same time, Plaintiff admitted he consumes the medication before the end of its prescribed cycle. (AR 45).

### B.   Treating Physician's Evaluation

Dr. Donald Breneman was Plaintiff's treating physician from December 2000 to August 2002. (AR 175-218). Dr. Breneman conducted a physical examination and found Plaintiff to have severe degenerative disc disease with paravertebral muscle spasms and tenderness. (AR 191-92, 195). Additionally, Plaintiff was diagnosed with having an unstable gait, atrophy of the legs and substandard Achilles and patellar reflex. (AR 191-94). Dr. Breneman recommended Plaintiff to use a cane because of Plaintiff's unstable gait. (AR 191). He opined that Plaintiff was "permanently and totally disabled" for purposes of employment.[5] (AR 206).

Throughout his treatment of Plaintiff, Dr. Breneman noted Plaintiff's extensive and lengthy history of substance abuse. From August 10, 2001 to August 20, 2002, Dr. Breneman recommended numerous

---

[4] Plaintiff asserted that he shared cleaning duties with his roommate and that the room was small. (AR 49).

[5] Dr. Breneman opined that in an eight-hour workday, Plaintiff's maximum capacity to occasionally carry or lift was less than ten pounds, Plaintiff's ability to stand or walk with normal breaks was less than two hours and Plaintiff's ability to sit without a break was one hour. (AR 191).

4

times that Plaintiff stop smoking and refrain from using alcohol and drugs. (AR 176, 179, 181, 185, 199, 207, 210). On November 7, 2001, Dr. Breneman commented that Plaintiff recently completed a detoxification program, (AR 203), and on February 6, 2002, Dr. Breneman noted that Plaintiff stopped using I.V. drugs. (AR 188). Later, however, on August 20, 2002, Dr. Breneman opined that Plaintiff would need drug counseling, suggesting that Plaintiff's detoxification program had failed. (AR 177). In addition, Dr. Breneman observed several times that Plaintiff used up his pain medication before the normal cycle. (AR 177-78, 188).

**C.   Consultative Evaluations**

Plaintiff was examined by two orthopedic consultative physicians in connection with his application for benefits. On March 20, 2002, Dr. Bunsri Sophon conducted an orthopedic evaluation on Plaintiff. (AR 146-50). He commented that Plaintiff was well-developed, well-nourished and in no acute distress. (AR 147). Dr. Sophon also noted that Plaintiff's cervical, thoracic and lumbar parts of his spine were normal, without evidence of swelling, palpable mass, inflamation or tenderness. (AR 148). The examination revealed no abnormalities of Plaintiff's patellar reflex or Achilles reflex. (AR 150). In addition, Plaintiff sat and stood with normal posture and his gait was normal.[6] (AR 147). Dr. Sophon opined that Plaintiff could lift and carry 100 pounds occasionally and fifty pounds frequently. (AR 150). Dr. Sophon also

---

[6] Dr. Sophon observed that Plaintiff did not use an assistive device to move and was able to get on and off the examining table without difficulty. (AR 147).

noted Plaintiff's social history, in which Plaintiff reported that he smoked one-half pack of cigarettes per day and did not currently use alcohol.[7] (AR 147).

On April 4, 2002, Dr. Anh-Tat Hoang conducted another orthopedic examination on Plaintiff. (AR 151-58). Dr. Hoang's physical examination resulted in findings similar to that of Dr. Sophon's. (AR 152-156). Dr. Hoang noted that Plaintiff moved without an antalgic gait or a discernible limp and Plaintiff did not require the use of an assistive device. (AR 152, 156). Plaintiff did not have atrophy of his legs and his reflexes were normal throughout. (AR 155-56). Dr. Hoang found that Plaintiff's cervical, thoracic and lumbosacral parts of his spine were normal, without significant tenderness or muscle spasms. (AR 152-153). Dr. Hoang concluded that Plaintiff had no significant impairment in the ability to stand/walk or sit. (AR 156). He opined that Plaintiff could lift and carry at least fifty pounds occasionally, and lift and carry at least twenty-five pounds frequently. (AR 156). Dr. Hoang commented on Plaintiff's social history and habits, including Plaintiff's denial of current alcohol usage. (AR 152). In addition, Dr. Hoang observed multiple needle marks in Plaintiff's forearms. (AR 156).

\\
\\
\\

---

[7] However, as noted above, Dr. Breneman advised Plaintiff to stop using alcohol and drugs numerous times after this date. (AR 176-181).

**D.   Radiologists' Evaluations**

Per Dr. Breneman's request, Dr. Smith X-rayed Plaintiff on September 19, 2001 and determined that Plaintiff had degenerative disk disease at all levels, more severe at L5-S1 level, and slight levoscoliosis. (AR 217). On May 15, 2002, at the request of Dr. Hoang, Dr. Delafraz X-rayed Plaintiff and concluded that Plaintiff had mild spondylosis and mild levoscoliosis of the lumbar spine, mild unilateral disc narrowing, arthritic change of the facet joints of the lower lumbar spine, metallic bodies and atherosclerosis of the abdominal aorta. (AR 158).

**E.   Non-Examining Physician's Evaluation**

On June 17, 2002, a physical residual functional capacity[8] ("RFC") assessment was completed by Dr. Schwartz, a state Disability Determination Service ("DDS") physician. (AR 159-166). Dr. Schwartz determined that Plaintiff had disorders of muscle, ligament and fascia. (AR 61). In addition, Plaintiff was diagnosed with having chronic liver disease and cirrhosis. (AR 61). Dr. Schwartz concluded that Plaintiff could conduct medium work. (AR 159-66). Plaintiff could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for about six hours; and sit for about six hours. (AR 160).

---

[8] RFC is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

7

### F. Vocational Expert's Testimony

Ms. Sandra Trost testified at the hearing as a vocational expert. She asserted that Plaintiff's past relevant work positions require medium to heavy exertion and range from unskilled to skilled work. (AR 29, 52-55). The ALJ posed several hypotheticals to Ms. Trost, including a hypothetical involving an individual of the same vocational and educational background as Plaintiff, who has an RFC of light work with an option to sit or stand. (AR 56). Ms. Trost stated that though the individual could not do Plaintiff's past relevant work, the individual could do light work at the entry level, including as a cashier or photo counter clerk. (AR 56-57).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[9] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

---

[9] Substantial gainful activity means work that involves doing significant and productive physical or mental duties, and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

8

1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.
(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.
(4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.
(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098-99); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett, 180 F.3d at 1098).  Additionally, the

ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process discussed above. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (AR 31). At the second step, the ALJ determined that Plaintiff had degenerative disc disease of the lumbar spine, which he concluded was a severe impairment. (AR 28; 30). At the third step, the ALJ found that the impairment did not meet or medically equal any of the
\\

impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28; 30).

At the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (AR 29; 31). This determination was based on the ALJ's finding that Plaintiff retained the RFC to perform a wide range of light work but required the option to sit or stand at will. (AR 29; 31). The ALJ observed that this RFC was more generous than that found by the orthopedic examiners or the DDS because he took into account the pain and discomfort that Plaintiff alleged. (AR 29).

Specifically, the ALJ found that Plaintiff could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; occasionally climb, balance, stoop, kneel, crouch and crawl; sit for "about [four] hours" in an eight-hour workday; and stand or walk for "about [four] hours." (AR 29; 31). In addition, the ALJ found that Plaintiff was closely approaching advanced age, had a limited education and had no transferable skills from any past relevant work.[10] (AR 29; 31).

At the fifth step, based on Plaintiff's RFC and Ms. Trost's testimony, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy, such as that of a cashier or photo counter clerk. (AR 30; 31). Thus, Plaintiff was not disabled at any time through the date of the decision. (AR 30; 31).

---

[10] The ALJ determined that Plaintiff had no transferable skills and/or transferability was not an issue in this case. (AR 29, 31).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick, 157 F.3d at 720 (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\
\\

**DISCUSSION**

Plaintiff contends that the ALJ erred by failing to propound a complete hypothetical to the vocational expert. (JS at 4). Plaintiff claims that the RFC found in the ALJ's decision, where Plaintiff was deemed to be able to "sit for about [four] hours and stand [or] walk for about [four] hours in an [eight]-hour workday," (JS at 4-6, AR 31), contradicted the actual RFC posed to the vocational expert, where she was to assume that the individual could perform "light work" (i.e., stand or walk up to approximately six hours). (JS at 4-6, AR 30, AR 56-57). The Court disagrees with Plaintiff's contention.

**The ALJ Provided A Complete Hypothetical To The Vocational Expert**

At step five of the sequential evaluation, the Commissioner has the burden to prove that the claimant is able to make an adjustment to other work. Bustamante, 262 F.3d at 953-54. Here, the Commissioner determined that Plaintiff could perform other work that exists in significant numbers in the national economy, following the testimony of the vocational expert, Ms. Trost. (AR 29-30, 55-57).

In order for the vocational expert's testimony to constitute substantial evidence, an ALJ must pose hypothetical questions that "consider all of the claimant's limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)). However, the ALJ is not required to include limitations for which there is no evidence. See Osenbrock, 240 F.3d at 1164-65 (holding that an ALJ is not bound to accept as true the

restrictions set forth in a hypothetical if they were not supported by substantial evidence). Instead, the ALJ is required to pose hypothetical questions based upon medical assumptions supported by substantial evidence in the record that reflect the claimant's limitations. Id. at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), cert. denied, 517 U.S. 1122, 116 S. Ct. 1356, 134 L. Ed. 2d 524 (1996)).

Plaintiff contends that the ALJ provided an incomplete hypothetical to Ms. Trost. (JS at 4). Plaintiff claims that because the ALJ determined Plaintiff to be able to sit and stand/walk for "about [four] hours," the hypothetical should have reflected this limitation instead of allowing Ms. Trost to assume that the hypothetical individual could do "light work" with an option to sit or stand.[11] (JS at 4, AR 30, AR 56-57). However, as the Court further explains below, the hypothetical did not contradict the ALJ's decision as he did not explicitly limit Plaintiff's ability to stand/walk or sit to four hours.

"Light work" requires "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." Social Security Ruling ("SSR") 83-10. "Frequent" is defined as "occurring from one-third to two-thirds of the time." SSR 83-10. Frequent lifting or carrying requires being on one's feet, i.e.,

---

[11] Plaintiff mistakenly states that the ALJ found that "[Plaintiff] could not stand [or] walk for more than four hours in an eight[-]hour workday," (JS at 6), when in fact the ALJ concluded that Plaintiff could stand or walk for "about [four] hours." (AR 29; 30).

14

1  standing or walking up to a total of approximately six hours in an
2  eight-hour workday.  SSR 83-10.

4      The ALJ determined that Plaintiff could "sit for about four hours
5  and stand and walk for about four hours in an eight-hour workday, with
6  the option to sit or stand at will." (AR 29).  In addition, the ALJ
7  found Plaintiff to be able to perform a "wide range of light work."
8  (Id.).  Based on the SSR's definition of "light work" and "frequent," an
9  individual must be able to stand or walk anywhere from two hours and
10 forty minutes to five hours and twenty minutes.  See SSR 83-10.  "Four
11 hours" is between these two extremes.  Hence, when the ALJ used the term
12 "about [four] hours," a strong inference can be made that he intended to
13 state the full range of the standing or walking requirement for "light
14 work" (i.e., Plaintiff was able to stand/walk or sit up to five hours
15 and twenty minutes with an option to sit or stand) by providing an
16 approximated number that is the average of the two extremes.  Thus, the
17 hypothetical was not improper.

19     Even assuming arguendo that the ALJ's hypothetical did contradict
20 his RFC findings, the error was harmless.  See Curry v. Sullivan, 925
21 F.2d 1127, 1131 (9th Cir. 1990) (holding that an ALJ's error in a Social
22 Security benefits hearing is harmless where it does not affect the
23 determination) (citing Booz v. Sec'y of Health and Human Servs., 734
24 F.2d 1378, 1380-81 (9th Cir. 1984)).  The difference between "about
25 [four] hours" and five hours and twenty minutes was insignificant in
26 \\
27 \\
28 \\

15

light of other more developed evidence. See also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (whether or not ALJ included all of claimant's limitations in hypothetical was harmless error where other reliable evidence supported ALJ's findings).

Here, it is clear that the hypothetical propounded to Ms. Trost was based upon medical assumptions supported by substantial evidence in the record. Though Dr. Breneman found Plaintiff to be capable of less than sedentary work, (AR 28, 191-192), Drs. Hoang, Sophon and Schwartz opined that Plaintiff was capable of at least medium work. (AR 28, 150, 156, 160-63). In making his determination, the ALJ placed more weight on the opinions of Drs. Hoang and Sophon because Dr. Breneman's record sharply contrasted the other opinions and was not well supported by medical findings. (AR 28). Dr. Breneman's conservative course of treatment (i.e., pain medication), (176-216), and the objective findings (i.e., X-rays) failed to support the severe limitations found in his report. (AR 28, 158, 217). In addition, Drs. Hoang and Sophon were specialists in the field of orthopedics while Dr. Breneman was an internist and a general practitioner. (AR 28-29).

The ALJ concluded that Plaintiff's allegations of back pain were credible but not to the extent Plaintiff alleged because of his treatment history and his description of his daily activities. (AR 29). The ALJ provided clear and convincing reasons for discounting Plaintiff's allegations of disabling pain.

For example, the ALJ observed that, after discontinuing treatment with Dr. Breneman, Plaintiff did not utilize county facilities, even

16

though he was aware that they provide free services. (AR 47). Additionally, Plaintiff took daily walks to a nearby park, did chores, groomed himself and cooked meals. (AR 48-49). Such daily activities render Plaintiff's claim of inability to do light work questionable.

Furthermore, the difference between "about [four] hours" and five hours and twenty minutes (the asserted error) would not have significantly affected Plaintiff's ability to work. First, requiring Plaintiff to sit or stand/walk for one hour and twenty minutes more than what was found in the ALJ's decision would be a nominal increase. Second, the option to sit or stand afforded to Plaintiff diminishes the severity of sitting or standing/walking for five hours and twenty minutes.[12] At the hearing, the ALJ asked Ms. Trost to assume that Plaintiff was capable of light work and had the option to sit or stand. (AR 56). In response, Ms. Trost affirmed that Plaintiff would be able to do light work. (AR 56-57). Consistent with the hypothetical, Plaintiff could switch positions to relieve his back pain and could chose to sit or stand, as needed. Thus, under this hypothetical, Plaintiff would not be subjected to the pain associated with five hours and twenty minutes of prolonged sitting. Any alleged error in the hypothetical was therefore immaterial.

\\
\\
\\
\\

---

[12] The sit or stand option is granted to individuals "not functionally capable of doing . . . the prolonged standing or walking contemplated for most light work." SSR 83-12.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 15, 2006.

_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE